# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | | |
|---|---|---|
| **GORDON SCHROEDER** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **Case No. 4:19-cv-623** |
| v. | ) | |
| | ) | |
| **SPIRE, INC., et al.** | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S MOTION TO REMAND TO STATE COURT, WITH SUGGESTIONS IN SUPPORT

Pursuant to 28 U.S.C.§1447, Plaintiff Gordon Schroeder (Plaintiff) moves this Court for an order remanding this case to state court because there is no basis for federal court subject matter jurisdiction over the state law claims asserted in this case. On August 7, 2019, Defendant Spire, Inc. and Defendant Spire Missouri, Inc. (collectively Spire Defendants) filed in this court a "Notice of Removal" [Document 1] of Plaintiff's civil action filed in the 16th Judicial Circuit Court of Jackson, County, Missouri, claiming subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1367.[1] Through his Petition and First Amended Petition originally filed in Jackson County, Missouri and his First Amended Complaint recently filed with this court, Plaintiff has only alleged state law claims against the Spire Defendants and Defendant Occupational Health Centers of Kansas, P.A., d/b/a/ Concentra (Defendant Concentra): Count I against the Spire Defendants for disability discrimination in violation of the Missouri Human Rights Act (MHRA), Mo. Rev. Stat. § 213.055; Count II against the Spire Defendants only for age discrimination in violation of the MHRA, § 213.055; Count III against the Spire Defendants for retaliation in violation of the

---

[1] The Spire Defendants could not have alleged diversity jurisdiction as a basis for removal as they are Missouri citizens and therefore complete diversity does not exist under 28 U.S.C. §1332.

MHRA, § 213.070; Count IV against the Spire Defendants and Defendant Concentra for breach of confidentiality of Plaintiff's private medical records in violation of Missouri common law; and Count V against Defendant Concentra only for tortious interference with business expectancy in violation of Missouri common law.

Plaintiff's motion to remand should be granted for two reasons. First, Plaintiff pled only state law claims, none of which are dependent on any analysis nor interpretation of the terms of a Collective Bargaining Agreement (CBA) and are independent and therefore, no federal subject matter jurisdiction arises under 29 U.S.C. § 301, the Labor Management Relations Act (LMRA), nor any other federal law to support jurisdiction under 28 U.S.C. §§ 1331 or 1441. Second, the Spire Defendants failed to comply with the unanimity rule under 28 U.S.C. § 144l(b)(2) when filing their notice of removal, in that all three (3) properly served Defendants failed to timely join in or otherwise consent to Defendants Spire's removal of Plaintiffs state court civil action, including claims under Count IV asserted against all Defendants and Count V against Defendant Concentra.

# I.
## <u>OUTLINE</u>

Motion to Remand…………………………………………………………………………1

Table of Authorities…………………………………………………………………………3

Suggestions in Support of Motion………………………………………………………5

# II.
## <u>TABLE OF AUTHORITIES</u>

**<u>Federal Cases</u>**                                                                                    **<u>Page</u>**

*Brown v. Holiday Stationstores, Inc.,* 723 F. Supp. 396, 406-07 (D. Minn. 1989)……18

*Caterpillar, Inc. v. Williams,*
    482 U.S. 386, 392, 398-99, 107 S. Ct. 2425, 96 L.Ed.2d 319 (1987)………...8, 9

*Christiansen v. West Branch Community School District,*
    674 F.3d 927, 932-33 (8th Cir. 2012) …………………………………………………20

*Davis v. Johnson Controls, Inc.,* 21 F.3d 866, 868 (8th Cir. 1994)…………………16, 17

*Greene v. Ameritrade, Inc.,* 279 F.3d 590, 596 (8th Cir. 1990)…………………………8

*Hanks v. General Motors Corp.,* 906 F2 341 (8th Cir. 1988)……………………..8, 9, 18

*Hartis v. Chicago Title Ins. Co.*, 656 F3d 778, 781-82 (8th Cir. 2009) ……………………..6

*Johnson v. Anheuser Busch, Inc.,* 876 F.2d 620 (8th Cir. 1989)…………………………17

*Johnson v. MFA Petroleum Co.,* 701 F.3d 243, 247 (8th Cir. 2012)………………………6

*Karnes v. Boeing Co.,* 335 F.3d 1189, 1193-94 (10th Cir. 2003)………………...16

*Kearns v. Beco Concrete Products, Inc.*, 2015 WL 4094104 (E.D. Mo. July 7, 2015) …….9

*Laresca v. American Telephone & Telegraph,*
    161 F.Supp.2d 323, 329-33 (D.N.J. 2001)……………………………………………17

*Lingle v. Norge Division of Magic Check, Inc.,* 486 U.S. 399, 407-10, 413 (1998) ……8

*Livadas v. Bradshaw,* 512 U.S. 107, 123-24 114 S. Ct. 2068 (1994)………………9, 16

*Manning v. Wal-Mart Stores East, Inc.,* 304 F. Supp. 2d 1146, 1148 (E.D. Mo. 2004)…….6

Case 4:19-cv-00623-DGK   Document 28   Filed 12/04/19   Page 3 of 22

*Markham v. Wertin,* 861 F.3d 748, 753-58 (8th Cir. 2017)…………………………7, 8, 9

*Meyer v. Schnucks Markets, Inc.,* 162 F.3d 1048, 1050-52 (8th Cir. 1998)……………..20

*Nicely v. Wyeth, Inc.,* 2011 WL 2462060 at *2 (E.D. Mo. Jun. 17, 2011) …………………6

*Transit Cas Co. v. Certain Underwriters at Lloyd's of London,*
119 F.3d 619, 625 (8th Cir. 1997)……………………………………………………6

**State Cases**

*Baldridge v. Kansas City Public Schools,* 552 S.W.3d 699, 710 (Mo. App. 2018) ……… 12

*Bowolak v. Mercy East Communities,* 452 S.W.3d 688, 696 (Mo. App.2014)…………...12

*City of Clayton v. Missouri Commission on Human Rights,*
821 S.W.2d 521, 531 (Mo. App. 1991) ……………………………………………12

*DeWalt v. Davidson Service/Air, Inc.,* 398 S.W.3d 491, 500 (Mo. App. E.D. 2013)…….12

*Fisher v. Spire Missouri, Inc., et al.,*
2019 WL 927728 at *1, 2019 LRRM  62, 947 (W.D. Mo. Feb. 26, 2019)……….7

*Ferguson v. Spire Missouri, Inc. et al.,*
No. 4:18-00869-NKL 2019 U.S. Dist. LEXIS 29868
(W.D. Mo. February 26, 2019)………………………………………….........7

*Fouche v. Mo. Am. Water Co.,* 2012 WL 2718925, at *7 (E.D. Mo. July 9, 2012)……..17

*Gust v. Spire Missouri, Inc., et. al.,*
(WD Case No. 4:19-CV-00430-BCW)…………………………………………1, 7

*Hervey v. Missouri Department of Corrections,* 379 S.W.3d 156, 160 (Mo. 2012) ………10

*Medley v. Valentine Radford Communications, Inc.,*
173 S.W.3d 315, 319-20 (Mo. Ct. App. W.D. 2015) …………………………10, 11

*Thomas v. DCL Fabrication, Inc. d/b/a DCL Fabrication and Supply, Inc.,*
2016 LRRM, 2016 WL 3971395 at *3, 4 (E.D. Mo. 2016)………………………17

*Weldon v. Spire Missouri, Inc. et al.,* 2019 WL 362278 at  *1
(W.D.Mo.  Jan. 29, 2019)………………………………………………………..7

*Wells v. Lester E. Cox Medical Centers,* 379 S.W.3d 919, 926 (Mo. App. 2012)………12

Case 4:19-cv-00623-DGK   Document 28   Filed 12/04/19   Page 4 of 22

**Federal Statutes**

28 U.S.C. § 1147(c) …………………………………………………………………6

28 U.S.C. § 1331……………………………………………………….....1, 2, 6, 7, 21

28 U.S.C. § 1332……………………………………………………………………...1

28 U.S.C. § 1367……………………………………………………………………1, 20

28 U.S.C. § 1441……………………………………………………………2, 6, 20

28 U.S.C. § 1441(b)(2)…………………………………………………………………20

28 U.S.C. § 1441(c)(1)(B)(2)……………………………………………………...20

28 U.S.C. § 1447 …………………………………………………………………...1

29 U.S.C. § 301………………………………………………....... 2, 7, 8, 9, 16, 17, 18

**Missouri Statutes and Miscellaneous**

Mo. Rev. Stat. § 213.010(5)…………………………………………………10, 11, 12

Mo. Rev. Stat. § 213.010(5)(c)……………………………………………………11

Mo. Rev. Stat. § 213.055…………………………………………...1, 10, 18,19

Mo. Rev. Stat. § 213.070…………………………………………………………...2

MAI 38.06 [2018] ………………………………………………………18, 19

MAI 38.07 [2018 New] ……………………………………………………..10

## III.
## SUGGESTIONS IN SUPPORT OF MOTION

**A.** **The Spire Defendants Cannot Satisfy their Burden of Demonstrating Federal Subject Matter Jurisdiction under 28 U.S.C. §§ 1331 and 1441, as Plaintiff's Amended Complaint includes only State Law Claims that Are Independent of Any Analysis or Interpretation of a Collective Bargaining Agreement.**

Removal statutes are strictly construed, and any doubts about the propriety of removal are required to be resolved in favor of state court jurisdiction and remand. *Manning v. Wal-Mart Stores East, Inc.,* 304 F. Supp. 2d 1146, 1148 (E.D. Mo. 2004) (citing *Transit Cas. Co. v. Certain Underwriters at Lloyd's of London,* 119 F.3d 619, 625 (8th Cir. 1997)); *Johnson v. MFA Petroleum Co.,* 701 F.3d 243, 247 (8th Cir. 2012). The party invoking federal jurisdiction and seeking removal has the burden of establishing jurisdiction by a preponderance of the evidence. *Hartis v. Chicago Title Ins. Co.,* 656 F.3d 778, 781-82 (8th Cir. 2009); *see also Nicely v. Wyeth, Inc.,* 2011 WL 2462060 at *2 (E.D. Mo. Jun. 17, 2011). Failure to demonstrate the existence of federal jurisdiction results in remand. 28 U.S.C. § 1147(c).

Defendants bear the burden of establishing subject matter jurisdiction in this case through reference to a specific reference to a provision of the applicable collective bargaining agreement (CBA), a burden Defendants fail to meet. Instead of relying on any specific provisions of the CBA claimed as necessary to be interpreted or analyzed, the Spire Defendants insufficiently and only vaguely state in their "Notice of Removal," "The relevant agreements between Spire and the union contain detailed provisions governing drug testing and medical certification." [Court Document 1, ¶ 6, p. 2]. The bare inclusion of only a vague reference to unnamed

"relevant agreements" is significant, considering the Spire Defendants have three (3) times been recently denied removal jurisdiction from the Western District of Missouri.[2]

1.    **Standard for Establishing Jurisdiction to Support Federal Subject Matter Removal to Federal Court under 28 U.S.C. § 1331 and under § 301 of the LMRA.**

Plaintiff anticipates that the Spire Defendants will attempt to rely on § 301 as the purported basis of federal subject matter jurisdiction. Section 301 of the LMRA governs claims founded on rights created by collective bargaining agreements or claims that depend on substantial analysis of collective bargaining agreements. *Markham v. Wertin,* 861 F.3d 755 (8th Cir. 2017.) "§ 301 cannot be read broadly to pre-empt non-negotiable rights conferred on individual employees as a matter of state law, and [the Court has] stressed that it is the legal character of a claim, as 'independent' of rights under the collective bargaining agreement…that decides whether a state cause of action may go forward.'" *Id.* "[W]hen the meaning of contract terms is not the subject of dispute,' mere reference to or consultation of a CBA, 'plainly does not require the claim to be extinguished.'" *Id.* It is not enough that the events in question took place at work or that a specific CBA creates rights similar or even identical to those on which the state law claim is based. *Id.* A state law claim may involve an analysis of the same set of

----

[2] *Weldon v. Spire Missouri, Inc.,* 2019 WL 362278 at *1 (W.D.Mo. Jan. 29, 2019) (granting plaintiff's motion for remand of MHRA claims for discrimination based on race for failure to demonstrate federal jurisdiction under § 301 of the LMRA); *Fisher v. Spire Missouri, Inc.,* 2019 WL 927728 at *1, 2019 LRRM 62,947 (W.D. Mo. Feb. 26, 2019) (slip opinion) (same); *Ferguson v. Spire Missouri, Inc.,* No. 4:18-00869-NKL 2019 U.S. Dist. LEXIS 29868 (W.D. Mo. February 26, 2019) (same). As stated in *Weldon,* "[D]efendants do not point to any CBA provision they believe requires interpretation. This is insufficient." *Weldon,* 2019 WL 362278 at *1. In a fourth case and one involving MHRA disability discrimination claims, *Gust v. Spire Missouri, Inc.,* WD Case No. 4:19-CV-00430-BCW, Plaintiff filed a motion to remand, which remains pending.

facts as a claim arising under a CBA and yet, still not compel preemption. *Hanks v. General Motors Co.,* 906 F.3d 341, 344 (8th Cir. 1990).

In *Lingle v. Norge Division of Magic Check, Inc.,* 486 U.S. 399, 407-10 (1998), the Court held that § 301 of the LMRA does not preempt a union member's right to pursue a claim for retaliatory discharge for exercising worker's compensation rights in violation of Illinois law. The Court reasoned that the elements of such a claim focus upon facts pertaining to the conduct of the employee and the conduct and motivation of the employer and therefore, the state-law remedy was independent of the CBA, in the sense that for § 301 preemption purposes, resolution of the state- law claim does not require construing the CBA. 486 U.S. at 407. The Supreme Court explained:

> [W]hile there may be instances in which the National Labor Relations Act pre-empts state law on the basis of the subject matter of the law in question, § 301 pre-emption merely ensures that federal law will be the basis for interpreting collective-bargaining agreements, and says nothing about the substantive rights a State may provide to workers when adjudication of those rights does not depend upon the interpretation of such agreements.

*Lingle,* 486 U.S. 399 at 408-10 (emphasis added, internal citations omitted). In most cases, the existence of a violation of state anti-discrimination law will not be dependent on the terms of a CBA. *Lingle,* at 413. Removal of a civil action from state to federal court based on federal subject matter jurisdiction is proper only if the action could have originally been filed in federal district court. *Markham v. Wertin,* 861 F.3d at 754; *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 107 S. Ct. 2425, 96 L.Ed.2d 319 (1987). Any uncertainties about removal are resolved in favor of remand to state court. *Greene v. Ameritrade, Inc.,* 279 F.3d 590, 596 (8th Cir. 2002).

8

Contrary to the Spire Defendants' likely assertion, reliance upon defenses to Plaintiff's claims based on provisions in a CBA fails to satisfy federal subject matter jurisdiction. *Markham v. Wertin,* 861 F.3d 748, 753-58 (8th Cir. 2017). *See also Caterpillar,* 482 U.S. at 398-99. Defendants will likely rely upon *Hanks v. General Motors Corp.,* 859 F.2d 67, 70 (8th Cir. 1988), for their erroneous claim that defenses should be considered in determining whether resolution of the state law claim requires construing the labor contract. The more recent 8th Circuit authority of *Markham*, however, relying upon more recent Supreme Court precedent, holds to the contrary. *See Kearns v. Beco Concrete Products, Inc.,* 2015 WL 4094104 (E.D. Mo. July 7, 2015) (remand granted where plaintiff's claims involved an employer who prevented a plaintiff medically released to return to work from returning following an injury at work, even though a collective bargaining agreement contained return to work and seniority provisions. "This argument is mistaken. Defendants have not made a showing that Kearns's claim depends on such an interpretation, only that their defense to his claim will require this interpretation. Under *Johnson* and *Williams*, this does not amount to § 301 preemption.").

Here, Plaintiff has pled only claims arising out of Missouri statutory and common law. As explained by the Supreme Court, "[W]hen the meaning of contract terms is not subject to dispute, the bare fact that a collective bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Livadas v. Bradshaw,* 512 U.S. 107, 124 114 S. Ct. 2068 (1994).

2. **The Spire Defendants Cannot Point to any Specific Provision of the CBA that Requires Analysis or Interpretation of Plaintiff's State Law Claims.**

Plaintiff's Amended Complaint sets forth his claims against the Spire Defendants in Counts I-IV, and are discussed as follows:

9

#### a. Count I – Disability Discrimination in Violation of the MHRA, Mo. Rev. Stat. § 213.055

Under the MHRA, a claim for disability discrimination consists of the following elements: 1) that the plaintiff is legally disabled; 2) plaintiff was discharged; and 3) the disability was a factor in the plaintiff's discharge. *Hervey v. Missouri Department of Corrections,* 379 S.W.3d 156, 160 (Mo. 2012); *Baldridge v. Kansas City Public Schools,* 552 S.W.3d 699, 710 (Mo. App. 2018); *Medley v. Valentine Radford Communications, Inc.,* 173 S.W.3d 315, 319-20 (Mo. Ct. App. W.D. 2015); *See also* Missouri Approved Instruction (MAI) 38.07 [2018 New]. The MHRA defines "disability" as:

> …a physical or mental impairment which substantially limits one or more of a person's major life activities, being regarded as having such an impairment, or a record of having such an impairment, which with or without reasonable accommodation does not interfere with performing the job…For purposes of this chapter, the term "disability" does not include current, illegal use of or addiction to a controlled substance as such term is defined by section 195.010; however, a person may be considered to have a disability if that person:…(c) Is erroneously regarded as currently illegally using, or being addicted to, a controlled substance…

Mo. Rev. Stat. §213.010(5) (2017). Count I of Plaintiff's Amended Complaint [Doc. No. 25] alleges the following in relation to the required elements of Plaintiff's MHRA claim for disability discrimination:

#### Element 1: *Plaintiff is legally disabled, as defined by the MHRA:*

- On or about December 1, 2015, Plaintiff sustained permanent serious and debilitating injuries in a car wreck, including suffering a shattered left knee, complicated by a left lower leg blood clot, resulting in chronic peripheral neuropathy, for which his treating physician prescribed pain managing drugs. As a result of the permanent injuries from Plaintiff's 2015 car accident, Plaintiff had a physical impairment which substantially limited one or more major life activities, including without limitation working and ambulation, was regarded as having such an impairment and had a record of an impairment, which with or without reasonable accommodation did not interfere with the performance of his job positions, within the meaning of a "disability" under the MHRA, Mo. Rev. Stat. § 213.010(5). Plaintiff's Amended Complaint, ¶¶ 11-12

- Following his 2015 car accident and sustaining of injuries resulting in Plaintiff being disabled, Plaintiff returned to work and continued working in his position of a General Records Clerk. Plaintiff's essential job functions varied over time to include varied regular assignments, tasks and projects that were to be performed on the computers assigned to him. By way of example, Plaintiff's work as a General Records Clerk included some but not all of the job functions listed on written Position Descriptions for the position of General Records Clerk and included additional ongoing and extensive assignments not included on such written Position Descriptions for the position, including extensive and ongoing work on Safety Committees, videographer work, media and graphic design work on behalf of Defendants Spire, GPS mapping and updating of physical mapping. Plaintiff did not have nor was he required to have a CDL license to perform his job position. Plaintiff was never assigned Spire outdoor uniforms, acknowledging that the performance of his job duties were primarily directed at office work on his assigned computers. Plaintiff occasionally did go out to the field to perform some work duties, he was not required to do so and could schedule his time in a manner to ride along with other workers instead of driving if necessary to do so. Plaintiff's Amended Complaint, ¶ 13.

- Plaintiff performed the functions of his job as a General Clerk in a competent manner and without incident for over three years, while Plaintiff continued to be prescribed and take pain managing drugs under the care of his treating doctor. During this same time period, Defendants Spire accommodated Plaintiff's disability in several ways, including without limitation omitting the performance of job duties such as the performance of skip work or other work requiring excessive walking and allowing him to ride along with other workers when performing job duties as a general clerk outside the office environment. Plaintiff's essential job duties as a General Records Clerk did not include safety sensitive work. Defendants Spire were seeking to shift Plaintiff's job duties to exclusively working on projects that were expected or could be expected to be performed on computers in his office environment while omitting the performance of production work. Plaintiff's Amended Complaint, ¶ 14.

- Defendants Spire treated Plaintiff in the manner as if he had failed a DOT drug test, which he had not, and thereby erroneously regarded Plaintiff as currently illegally using drugs and/or being addicted to a controlled substance, within the meaning of the MHRA, Mo. Rev. Stat. §213.010(5)(c). In addition, because Plaintiff had already returned to work following his negative drug test, no valid reason existed to stand him down on March 5, 2018, or at any other time. Plaintiff's Amended Complaint, ¶ 25.

Under the MHRA, the definition of disability encompasses whether the impairment, with or without reasonable accommodation, interferes with the Plaintiff's performance of the job in question. §213.010(5); *Medley*, 173 S.W.3d at 320 ("This is the main difference between the MHRA and the ADA [Americans with Disabilities Act]…").

Plaintiff does not rely upon any provision in the CBA in order to establish that he is disabled within the meaning of the MHRA. Missouri courts interpreting the MHRA recognize that a Plaintiffs long-standing history of exemplary job performance at a job position, even considering the prior accommodations provided by the employer, will establish an MHRA disability claim. In *DeWalt v. Davidson Service/Air, Inc.,* 398 S.W.3d 491, 500 (Mo. App. E.D. 2013), the plaintiff suffered a tumor to his brain and as a result, had a ninety (90) mile driving restriction which his employer had accommodated for many years by assigning him to local instead of out of town routes. The fact of the plaintiff's prior accommodation for his driving and the fact of his satisfactory performance of his job duties with the prior accommodation established the necessary facts that the plaintiff had a disability to establish liability under the MHRA. *Id.*

Missouri courts recognize that that a disability is not considered job-related within the meaning of §213.010(5) when an employer could reasonably accommodate the impairment. In *Baldridge,* the Court held that the removal of reasonable accommodations provided for over 8 years to an employee with paraplegia violated the MHRA's prohibitions against disability discrimination. *See also City of Clayton v. Missouri Commission on Human Rights,* 821 S.W.2d 521, 531 (Mo. App. 1991) (holding employer who never explored reasonable accommodations for employee's impairment to be liable for disability discrimination). *See also Wells v. Lester E. Cox Medical Centers,* 379 S.W.3d 919, 926 (Mo. App. 2012) (fact of prior satisfactory performance with prior accommodations by Defendant established elements to satisfy MHRA claim); *Bowolak v. Mercy East Communities,* 452 S.W.3d 688, 696 (Mo. App.2014) (prior record of impairment and workers' compensation claim and settlement of the same along with evidence of

satisfactory performance of job functions up to termination were sufficient to establish disability discrimination).

**Element 2:** *Plaintiff Suffered an Adverse Employment Action.*

Plaintiff pleads the second element of his MHRA disability claim, as follows:

- Plaintiff was constructively discharged in July of 2018 after having been off work without pay for five (5) months and was thereby forced into taking early retirement because he could no longer afford to continue to live without compensation. Plaintiff's Amended Complaint, ¶ 44.

**Element 3:** *The motivating factor in the constructive discharge was Plaintiff's disability.*

Plaintiff pleads the third element of his MHRA disability claim, as follows:

- On or about January 22, 2018, Plaintiff was required to undergo random drug testing, where the results indicated the presence of Schedule II Opioids in his system, the result of the presence of prescription drugs. Based on a verified valid prescription, Plaintiff's drug test was reported to Defendants Spire as negative. Plaintiff's Amended Complaint, ¶¶ 16, 19, 21.

- At Womack's suggestion, Plaintiff requested and obtained a note from his personal physician clearing Plaintiff to continue to work in his current job position performing the positions of a General Clerk, while continuing to take his prescribed medications. Womack admitted to Plaintiff that the best person who would know Plaintiff's capabilities for performing his work duties was Plaintiff's own treating physician who had prescribed the medications at issue and who continued to provide medical oversight of Plaintiff's ongoing treatment. Plaintiff's Amended Complaint, ¶ 22.

- On or about February 27, 2018, despite having a negative drug test result from MRO Womack, without any basis to believe that Plaintiff could not continue to perform his job duties, with or without reasonable accommodations, Defendants Spire, through their Human Resources representatives Gwen James and Cindy Dove, met with Plaintiff and told him that Defendants needed him to "go to Concentra" and "to sign a HIPPA form." In response, Plaintiff raised issues related to the nature of his job duties and whether those job duties involved the performance of safety sensitive duties, but Defendants refused to engage in an interactive process to discuss essential job functions of Plaintiff in his job position as a General Clerk nor any reasonable accommodations for such essential functions. Plaintiff further informed Defendants that he was being discriminated against, had been seeking legal advice related to his situation and raised issues regarding the accommodations for the performance of his job duties in his position as a General Clerk. Defendants, on the other hand, insisted that Plaintiff was required to be in compliance with the requirements of job positions and job

13

requirements that he had not been performing and/or had been performing with reasonable accommodations over longer than the last three years of his employment in his position as a General Clerk. While Plaintiff attempted to enter an interactive process with Defendants to discuss the essential functions of the job position of which he had been safely performing, and any reasonable accommodations needed to continue to perform such job position, Defendants refused to engage in such interactive process. Plaintiff's Amended Complaint, ¶ 23

- On March 5, 2018, Defendant Spire informed Plaintiff that he was being sent home and directed Plaintiff to leave work, without informing him of the reason for their directives. In so acting, Defendants both discriminated against Plaintiff on the basis of his disability within the meaning of the MHRA and retaliated against him for his exercise of rights under the MHRA for having had reasonable accommodations in the past and for asserting his rights in the meeting of February 27, 2018 with James and Dove. Plaintiff's Amended Complaint, ¶ 24

- On March 21, 2018 Plaintiff attended a meeting with Moran and Vice President William Stovall (Stovall), who informed Plaintiff that he would undergo a fitness-for-duty exam that Defendants had scheduled for Plaintiff for the following day. In response, Plaintiff again expressed concerns already raised in his meeting with Janes and Dove on February 27, 2018, including that Plaintiff's actual job duties were not being analyzed in relation to whether he could safely perform his job duties and Plaintiff had not been informed what job duties were claimed he could not perform, among other discussions. Plaintiff also informed Defendants he had followed Womack's suggestion to obtain a note from his doctor clearing him to return to work. In so doing, Plaintiff was again attempting to engage Defendants in an interactive process to discuss the essential functions of the job position he had been performing for the past three years, along with reasonable accommodations needed to continue to perform such job position, but Defendants failed to identify any job function claimed to be essential that Defendants claimed he was unable to perform, with or without reasonable accommodations. Plaintiff's Amended Complaint, ¶ 26

- Plaintiff asked Moran and Stovall to send an updated job description that reflected Plaintiff's position as a General Clerk to the MRO at Concentra prior to Plaintiff's fitness-for-duty exam. On information and belief, the requested job description was not given to the MRO at Concentra before Plaintiff's fitness-for-duty exam or at any other time. Plaintiff's Amended Complaint, ¶ 28

- On or about March 22, 2018, at the direction of Defendant Spire and Defendant Spire Missouri, Plaintiff was seen at Defendant Concentra's office location by Dr. Sue Jennings, a doctor believed to have just been certified as a DOT certified physician in the weeks prior to this exam. During Plaintiff's meeting with Jennings, Plaintiff revealed that he took prescription pain medication for breakthrough pain in the evening but that he did not take this medication while at work. Plaintiff also communicated with Jennings, among other matters, that he did not have a DOT license and worked as

a General Clerk that was not a safety sensitive position. Plaintiff's Amended Complaint, ¶¶ 29, 30

- Plaintiff's treating physician had not sent Plaintiff's medical records before the completion of his fitness-for-duty examination, so Jennings told Plaintiff that until she could review his medical records, he could work so long as he did not engage in any safety sensitive job duties. Defendant Spire and Defendant Spire Missouri, however, had already laid off Plaintiff, were not allowing him to work in any capacity and never contacted Plaintiff asking him to return to work. Plaintiff's Amended Complaint, ¶ 34

- On March 30, 2018, Plaintiff contacted Moran, Defendants' agent, to check on his work status. Moran revealed that Jennings' final recommendation was that Plaintiff not perform any safety sensitive duties. Defendants had already refused and continued to refuse to engage in any interactive process with Plaintiff to discuss the essential functions of his job duties, to identify which (if any) of Plaintiff's actual job duties that Defendants claimed could not be performed and/or were safety sensitive, to discuss whether the job duties were or were not related to his disability and whether or not Plaintiff could perform the essential functions of his job duties with or without reasonable accommodations, including the accommodations that Plaintiff had already been working under for over three years prior to his indefinite layoff of employment. Because Plaintiff had been taken out of work, he was ineligible to bid on any other jobs. Defendants further refused to consider the opinions of Plaintiff's own treating doctor as to Plaintiff's ability to perform the essential functions of his job position. Plaintiff's Amended Complaint, ¶ 35

- Upon receiving Plaintiff's medical records, Jennings falsely and unjustifiably concluded without an adequate basis that Plaintiff could not safely perform the functions of the job he had worked while on the medications at issue for the last three (3) years, despite the lack of objective evidence of Plaintiff being unfit-for-duty.In so determining, Jennings did not rely on any documentary or other evidence provided by Spire that would have suggested Plaintiff was unfit to perform the functions of his job and in addition, there was no job which Plaintiff was medically qualified to work while on his current medications, including his own General Clerk's position. Plaintiff's Amended Complaint, ¶¶ 36-37

- Plaintiff made Defendants aware of several job opportunities filled by new employees, contracted to make significantly less money for doing the same work than what Plaintiff would have been paid had he been placed in one of these available positions. Nonetheless, Defendant Spire and Defendant Spire Missouri claimed they had no work that Plaintiff could perform due to the safety sensitive nature of the work, even as they had high school aged employees who were not being drug tested performing the same job functions as Plaintiff. Plaintiff's Amended Complaint, ¶¶ 38-39

- Furthermore, other similarly situated employees of Defendant Spire Missouri (approximately twenty-six) were also randomly called for drug tests purportedly pursuant to DOT policy; however, such other employees were sent to different

15

Concentra locations for their fitness-for-duty exams than the one to which Defendants sent Plaintiff. Plaintiff was sent to the same Independence location to be examined by Jennings, a tactic designed to reach a pre-determined conclusion of Defendant Spire and/or Defendant Spire Missouri. Plaintiff's Amended Complaint, ¶ 42

- Defendant Spire and Defendant Spire Missouri have targeted older and disabled workers for disparate treatment in their fitness-for-duty program, have not had in place written policies to follow and have openly made up policies and rules as they went along to obtain the desired result of attempting to freeze out targeted employees. Plaintiff's Amended Complaint, ¶ 43

The allegations above do not require any analysis of any collective bargaining agreement in order for Plaintiff to succeed. In *Karnes v. Boeing Co.,* 335 F.3d 1189, 1193-94 (10th Cir. 2003), the Court found no preemption under § 301 even though the employer's anti-drug policy was found to be incorporated into the CBA at issue, even though the issue centered upon the discipline for violation of the anti-drug policy under state law. The fact the CBA incorporated the employer's anti-drug policy was found to be irrelevant because "§ 301 does not grant the parties to a [CBA] the ability to contract for what is illegal under state law." 335 F.3d at 1194 (citing *Livadas,* 512 U.S. at 123).

*Davis v. Johnson Controls, Inc.,* 21 F.3d 866, 868 (8th Cir. 1994), cited by Spire Defendants, does not assist their argument. In *Davis,* the plaintiff relied upon the employer's failure to allow him to return to work following a back injury after a period of time and after his medical condition had improved. *Davis* concluded that in order for plaintiff to show that he had a "handicap," the Court would need to examine the terms of the CBA to assess available accommodations which would require the analysis of the CBA to examine the seniority rights of not only the plaintiff in *Davis,* but also other members of his collective bargaining unit. *Davis,* 21 F.3d at 868.

16

In contrast to the facts in *Davis,* this is a case about a plaintiff, three (3) years removed from an injury who continuously performed his job duties in a satisfactory manner, but who was denied the very job he already held following a "random" drug screening that was negative, not positive, while his employer ignored his treating physician's opinions that Plaintiff was able to continue performing his job duties and ignored Plaintiff's repeated requests for a discussion of reasonable accommodations. Unlike *Davis,* there are no seniority rights that need be analyzed in order prove MHRA liability.[3]

In this case, the Spire Defendants cannot claim to have contracted away the terms of bargaining unit employees to be free from discrimination under Missouri law based on a disability by incorporating or referencing the employer's drug policies. Plaintiffs MHRA claims will focus upon the conduct of the employer and will not be dependent upon any analysis of the CBA. *See Thomas v. DCL Fabrication, Inc. d/b/a DCL Fabrication and Supply, Inc.,* 2016 LRRM, 2016 WL 3971395 at *3, 4 (E.D. Mo. 2016) (no § 301 preemption under MHRA disability discrimination or workers' compensation retaliation claims); *Laresca v.*

---

[3] Other cases cited by the Spire Defendants in their removal application are equally unpersuasive and do not even address the MHRA. In *Johnson v. Anheuser Busch, Inc.,* 876 F.2d 620 (8th Cir. 1989), the plaintiff brought claims for common law torts based on facts surrounding his termination of employment, all of which were predicated on violations of various terms of the CBA. The plaintiff's claims were therefore found necessarily dependent upon an analysis of the CBA's terms. In *Fouche v. Mo. Am. Water Co.,* 2012 WL 2718925, at *7 (E.D. Mo. July 9, 2012), the court emphasized that the determination of whether state law tort claims are preempted are made on a case-by-case basis, and in that particular circumstances, the employer's failure and refusal to grant reinstatement after a period of sick leave was based on violations of the terms of the CBA, circumstances not present in this case.

*American Telephone & Telegraph,* 161 F.Supp.2d 323, 329-33 (D.N.J. 2001) (finding no §

301 preemption for disability discrimination state law claim where accommodation claim did

not require interpretation of CBA, noting that mere reference to or consideration of the terms

of a CBA is not the equivalent of interpreting the meaning of terms); *Brown v. Holiday*

*Stationstores, Inc.,* 723 F. Supp. 396, 406-07 (D. Minn. 1989) (holding that diabetic

employee's state discrimination claim was not preempted, resulting in remand to state

court); *Hanks v. General Motors Co.,* 906 F.2d 341 (8th Cir. 1990) (holding that Plaintiff's

tort law claims for wrongful discharge, outrageous conduct, and intentional infliction of

emotional distress were not preempted by § 301, despite the existence of a CBA which

established specific grievance procedures for employee complaints such as sick leave, work

assignments and discharge claims, because those state law claims existed independent of that

agreement).

> ### b. Count II – Age Discrimination in Violation of the MHRA, Mo. Rev. Stat. § 213.055

Consistent with Missouri Approved Instruction (MAI) 38.06 [2018], Count II of

Plaintiff's Petition alleges the following related to his MHRA claim for age discrimination:

- Before sending Plaintiff for a fitness-for-duty exam Defendant Spire and Defendant Spire Missouri replaced Plaintiff's position with a much younger worker at a significantly lower rate of pay. Plaintiff's Amended Complaint, ¶ 49.

- Plaintiff's age was the motivating factor in the unlawful actions alleged herein. Plaintiff's Amended Complaint, ¶ 50.

For the reasons set forth in relation to Count I, Plaintiff's claim under Count II

likewise focuses on the conduct and motivations of the Defendants and seniority rights are

not at issue.

### c. Count III – Retaliation in Violation of the MHRA, Mo. Rev. Stat. § 213.055

Consistent with Missouri Approved Instruction (MAI) 38.06 [2018], Count III of Plaintiff's Amended Complaint alleges the following related to his MHRA claim for retaliation:

- Plaintiff engaged in protected activities under the MHRA in having had requested and obtained reasonable accommodations since Plaintiff's 2015 car accident, having raised issues of discrimination in meetings on February 27, 2018 and thereafter, and in questioning the process of drug testing for those with prescription medications. Plaintiff's Amended Complaint, ¶ 55 and incorporated ¶¶ 23-28.

- As a result of Plaintiff's engaging in protected activities, Defendant retaliated against Plaintiff by directing that he leave work on March 6, 2018 and not permitting him to return to work, by not engaging with him in an interactive process, by refusing to provide reasonable accommodations to him, by not considering the opinions of Plaintiff's own doctor with respect to his return to work status, by treating Plaintiff differently than other similarly situated employees, by harassing Plaintiff and breaching his medical confidentiality, and by constructively discharging Plaintiff. Plaintiff's Amended Complaint, ¶ 56.

Resolution of Count III of Plaintiff's Amended Complaint, just as Counts I and II, does not hinge on an analysis of any CBA and deals only with the conduct and motivations of the Defendant.

### d. Count IV – Common Law Breach of Confidentiality and Count V Tortious Interference with Economic Relationship

Under Count IV, Plaintiff alleges:

- Plaintiff has a legitimate and reasonable expectation of privacy in his private and confidential medical information and Defendants unlawfully acquired through coercion a full medical release. Plaintiff's Amended Complaint, ¶¶ 60-62

- Defendants communicated private and confidential healthcare information to the Union President and other supervisors of Defendants Spire not authorized to have such information, resulting in widespread dissemination of Plaintiff's confidential medical information. Plaintiff's Amended Complaint, ¶¶ 63-65.

Under Count V, Plaintiff alleges:

- A valid business relationship existed between Plaintiff and Spire Missouri wherein Plaintiff performed work for Spire Missouri in exchange for monetary compensation. Jennings had knowledge of the existing business relationship and Plaintiff's reliance on it continuing. And Jennings' motive in interfering was intentional and contrived with ill intent to cause damage to the Plaintiff. Plaintiff's Amended Complaint, ¶¶ 69-71.

- Jennings was not justified in finding that Plaintiff could not perform the essential functions of his job and this claim is based on many factors. Plaintiff's Amended Complaint, ¶¶ 72(a)-(e).

Plaintiff's claims under Count IV and Count V likewise do not raise any federal claim justifying removal and should be remanded. *See Meyer v. Schnucks Markets, Inc.,* 162 F.3d 1048, 1050-52 (8th Cir. 1998) (no federal preemption for Missouri common law claims).

**B. Defendants Have Not Complied with the Unanimity Rule under 28 U.S.C. § 1441(b)(2) in that all Properly Served Defendants have Failed to Timely Join in or Otherwise Consent to Defendants Spire's Removal of Plaintiff's State Court Civil Action.**

The asserted bases for removal of the Spire Defendants of Plaintiff's Amended Complaint included only 28 U.S.C. § 1441 *et seq.,* 28 U.S.C. § 1331, and 28 U.S.C. § 1367. The Spire Defendants failed to timely join all Defendants in their removal application. The failure to timely meet the unanimity rule is a basis to grant remand. *See Christiansen v. West Branch Community School District,* 674 F.3d 927, 932-33 (8th Cir. 2012). Plaintiff acknowledges that 28 U.S.C. § 1441(c)(l)(B)(2) only requires "defendants against whom a claim described in paragraph (l)(A) [federal subject matter jurisdiction] has been asserted are required to join in or consent to the removal under paragraph (1)." The unanimity requirement must still be met with respect to the claims asserted in Count IV against all Defendants. The Spire Defendants claim Plaintiff's claim for breach of privacy under Count IV is subject to federal jurisdiction under the complete preemption doctrine. To the extent the Spire Defendants continue such an assertion, their failure to join in Defendant Concentra in the notice of removal should result in the remand of this case to state court.

Respectfully Submitted,

**BRATCHER GOCKEL LAW, L.C.**

By:    */s/Marie L. Gockel*
           Lynne Jaben Bratcher, Mo. Bar No.:  31203
           Marie L. Gockel, Mo. Bar No.:  31208
           4014 B. South Lynn Court
           Independence, MO  64055
           Ph: (816) 221-1614
           Fax: (816) 421-5910
           E-Mail:  lynne@bgklawyers.com
                     marie@bgklawyers.com

**ATTORNEYS FOR PLAINTIFF**

I hereby certify that a copy of the foregoing was electronically filed on this 4th day of December, 2019, with the Clerk of the Court via the CM/ECF system which automatically transmits a Notice of Electronic Filing to the following counsel:

Paul F. Pautler, Jr.
Husch Blackwell LLP
4801 Main Street, Suite 1000
Kansas City, MO 64112-2551
Paul.pautler@huschblackwell.com

Brittany M. Falkowski
Husch Blackwell LLP
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105
Ph: 314-480-1608
Fax: 314-480-1505
Brittany.falkowski@huschblackwell.com

**ATTORNEYS FOR SPIRE DEFENDANTS**

Scott K. Logan
M. Bradley Watson
David M. Tyrrell
John F. Logan
LOGAN LOGAN & WATSON, L.C.
8340 Mission Road, Suite 106

Prairie Village, KS 66206
slogan@loganlaw.com
bwatson@loganlaw.com
dtyrrell@loganlaw.com
jlogan@loganlaw.com

**ATTORNEYS FOR DEFENDANT
OCCUPATIONAL HEALTH CENTERS
OF KANSAS**


　　/s/ Marie L. Gockel　　　　　
Attorney for Plaintiff