# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| GORDON SHROEDER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:19-CV-00623-DGK |
| ) | |
| SPIRE, INC., et al., ) | |
| ) | |
| Defendants. ) | |

## ORDER DENYING MOTION TO REMAND

This case arises from Plaintiff Gordon Shroeder's allegations that Defendant Spire, Inc., and its subsidiary, Defendant Spire Missouri, Inc., (collectively, "Spire") discriminated against him based on disability and age and retaliated against him in violation of the Missouri Human Rights Act ("MHRA"), Mo. Rev. Stat. § 213.010 *et seq*. Plaintiff also alleges a claim against Spire for breach of confidentiality after failing to keep his private medical records confidential. Plaintiff filed this lawsuit in the Circuit Court of Jackson County, Missouri, and Spire removed it to this Court based on federal-question jurisdiction. Spire claims § 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 141, *et. seq.*, completely preempts Plaintiff's claims.

Pending before the Court is Plaintiff's Motion to Remand (Doc. 28). Finding that his claims are substantially dependent upon or inextricably intertwined with interpretation of the terms in the parties' collective bargaining agreement ("CBA"), the motion is DENIED.

## Background

Plaintiff was an employee at Spire, a natural gas utility provider. Because of the nature of its work, Spire is subject to the safety regulations promulgated by the Federal Motor Carrier Safety

Administration and the Pipeline and Hazardous Materials Safety Administration, agencies within the Department of Transportation ("DOT"). The DOT regulations require Spire to implement a drug-testing policy for its employees in safety-sensitive positions. These regulations set the types and amounts of controlled substances included in the tests and require employees in safety-sensitive positions who are prescribed controlled substances to be certified as physically fit for duty by a DOT-certified medical examiner.

While working at Spire, Plaintiff was a member of the Gas Workers Metal Trades Local 781 (Kansas City) Union ("the Union"), and so his employment was subject to the CBA between Spire and the Union. The CBA included a drug-testing policy ("the Policy") that listed the controlled substances that would be tested, in compliance with the DOT regulations. The Policy also noted that if any provision of the Policy conflicted with the DOT regulations, the regulations would govern. If the DOT implemented new regulations, "the statutory and regulatory changes affecting th[e] [P]olicy shall be implemented after notice to the Unions" (Doc. 35-1 at 1 n.1). On November 10, 2017, the DOT issued a final rule adding synthetic opioids (e.g., hydrocodone and oxycodone) to the screening panel, and Spire promptly notified the Union that it would add the new drugs to the testing panel in 2018. Consistent with DOT regulations, the Policy required employees in safety-sensitive position prescribed a controlled substance to be certified as fit to perform their job by a company-designated physician.

In January 2018, Plaintiff was randomly drug tested, and the test detected the presence of synthetic opioids. Pursuant to the policy, a medical-review officer reviewed the test results and confirmed with Plaintiff's physician that Plaintiff was legally prescribed the drugs. The medical-review officer then informed Spire that Plaintiff's test was not positive for any illegal narcotics, but he had safety concerns about Plaintiff's ability to perform his safety-sensitive job

while using opioids.

Plaintiff was then seen by a DOT-qualified medical examiner who determined Plaintiff was not physically fit to perform his job. Spire temporarily permitted Plaintiff to perform available non-safety-sensitive tasks before placing him on leave. While on leave, Plaintiff did not bid into any non-safety-sensitive position nor was he released back to work in any safety-sensitive position by a DOT-certified medical examiner. Because he could not afford to live without any compensation, he retired.

In light of these events, the Union filed two grievances: 1) regarding the Policy and the decision to begin screening for synthetic opioids, and 2) regarding Plaintiff's employment. The grievance regarding the Policy went to arbitration, and the arbitrator held that Spire did not breach the CBA when it changed the Policy to include testing of synthetic opioids. After this ruling, the Union withdrew its grievance regarding Plaintiff's employment.

On May 31, 2019, Plaintiff filed this case in the Circuit Court of Jackson County, Missouri, alleging Spire discriminated and retaliated against him, and disseminated his private medical information without his consent.[1] Plaintiff filed an amended petition about a month later and served Spire on July 8, 2019. Spire removed this action to federal court on August 7, 2019, within its thirty-day deadline pursuant to 28 U.S.C. § 1446(b) and Fed. R. Civ. P. 6(a)(1)(C). Plaintiff now seeks to remand this case back to state court.

**Standard**

The statute governing removal provides that "[a]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the

---

[1] Plaintiff also alleged claims in its amended complaint filed in this Court against Defendant Occupational Health Centers of Kansas, P.A. d/b/a Concentra ("Concentra") for breach of Plaintiff's private medical information and tortious interference. After Plaintiff and Concerta reached a settlement, however, this Court dismissed Concerta from the lawsuit.

3

defendant . . ." 28 U.S.C. § 1441(a). Defendants claim this Court has original and exclusive jurisdiction over Plaintiff's claims pursuant to its federal-question jurisdiction, 28 U.S.C. § 1331. The removing party bears the burden of establishing federal jurisdiction. *Bell v. Hershey Co.*, 557 F.3d 953, 956 (8th Cir. 2009).

The existence of federal-question jurisdiction typically depends on application of the "well-pleaded complaint rule, which provides that federal jurisdiction exists only when a federal question is presented on the face of [a] plaintiff's properly pleaded complaint." *Boldt v. Northern States Power Co.*, 904 F.3d 586, 590 (8th Cir. 2018) (quoting *Markham v. Wertin*, 861 F.3d 748, 754 (8th Cir. 2017)). But there is an exception to this rule in cases of "complete" preemption, that is, where a federal statute "so completely pre-empt[s] a particular area that any civil complaint raising this select group of claims is necessarily federal." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987).

Section 301 of the LMRA provides that "[s]uits for violations of contracts between an employer and a labor organization . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a). The Supreme Court has made clear that Section 301 completely preempts state-law claims founded on rights created by a CBA, as well as claims whose resolution is substantially dependent upon or "inextricably intertwined" with interpretation of a CBA's terms. *Trs. of the Twin City Bricklayers Fringe Benefit Funds v. Superior Waterproofing, Inc.*, 450 F.3d 324, 330 (8th Cir. 2006) (citing *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 102–03 (1962); *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213, 220 (1985)). A claim is substantially dependent on the CBA if it requires the interpretation of some specific provision of a CBA, including any documents incorporated by reference. *Boldt*, 904 F.3d at 590.

4

"While section 301 preempts claims founded directly on rights created by a CBA and claims substantially dependent on analysis of a CBA, not every dispute concerning employment or tangentially involving a provision of a CBA is preempted by section 301." *Clark v. Kellogg Co.*, 205 F.3d 1079, 1082 n.2 (8th Cir. 2000) (citation omitted). When resolution of a state-law claim consists of "purely factual questions pertain[ing] to the conduct of the employee and the conduct and motivation of the employer," there is no preemption because the claim does not require a court to interpret any term of a CBA. *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 407 (1988) (holding § 301 did not preempt a state-law claim for retaliatory discharge even though the plaintiff initiated a grievance under the CBA before filing his lawsuit). Thus, for there to be complete preemption, "the claim must require the interpretation of some specific provision of a CBA; it is not enough that the events in question took place in the workplace or that a CBA creates rights and duties similar or identical to those on which the state-law claim is based." *Meyer v. Schnucks, Mkts., Inc.*, 163 F.3d 1048, 1051 (8th Cir. 1998).

**Discussion**

**I.     The rule of unanimity does not require remand.**

Before addressing Plaintiff's main argument that remand is proper—that his claims are not preempted by the LMRA—this Court must first address Plaintiff's argument that Spire did not timely join Defendant Concerta in the notice of removal, and, therefore, violated the unanimity rule under 28 U.S.C. § 1446(b)(2)(A). The "rule of unanimity ordinarily requires that a case be remanded to the state court from which it was removed unless all defendants join in the motion for removal." *Casey v. F.D.I.C.*, 583 F.3d 586, 591 (8th Cir. 2009); 28 U.S.C. § 1446(b)(2)(A). Pursuant to § 1446(b)(2)(C), "[i]f defendants are served at different times, and a later-served defendant files a notice of removal, any earlier-served defendant may consent to the removal even

5

though that earlier-served defendant did not previously initiate or consent to removal." Although § 1446(b)(2)(C) does not describe the form or timeframe for consent when multiple defendants are involved, the Eighth Circuit has held that the unanimity rule is satisfied when a defendant files a "timely removal notice indicating consent on behalf of a codefendant, signed and certified pursuant to Rule 11," followed by the filing of "an indication of its consent." *Griffioen v. Cedar Rapids & Iowa City Ry. Co.*, 785 F.3d 1182, 1186 (8th Cir. 2015) (citing *Mayo v. Bd. of Educ. of Prince George's Cty.*, 713 F.3d 735, 742 (1st Cir. 2013) ("[A] notice of removal signed and filed by an attorney for one defendant representing unambiguously that the other defendants consent to the removal satisfies the requirement of unanimous consent for purposes of removal."))

Spire's notice of removal specifically stated that "[a]ll defendants who have been properly joined and served consent to the removal of the action" (Doc. 1 at ¶ 12), and Concerta subsequently indicated its consent to removal by filing an opposition to Plaintiff's motion to remand, which explicitly stated it "consented to removal" (Doc. 36 at 2). The Court concludes this is sufficient to satisfy the rule of unanimity. Therefore, it must address whether Plaintiff's claims are preempted by the LMRA.

**II.  Section 301 of the LMRA preempts Plaintiff's MHRA disability-discrimination claim.**

Plaintiff argues his claims arising under Missouri state law are wholly independent of the interpretation of the CBA. Spire responds that resolution of Plaintiff's disability-discrimination claim substantially depends upon the analysis of the terms of the CBA, and thus Plaintiff's MHRA claim is substantially dependent on the interpretation of the CBA's terms, which incorporates by reference the Policy. Specifically, Spire contends the Court will have to interpret the drug-testing Policy incorporated into the CBA to determine whether Plaintiff was disabled within the meaning of the MHRA.

6

"The proper starting point for determining whether interpretation of a CBA is required . . . to resolve a particular state law claim is . . . examination of the claim itself." *Trs. of the Twin City Bricklayers Fringe Benefit Funds*, 450 F.3d at 331. To prove a claim for disability discrimination under the MHRA, Plaintiff must show that: 1) he is legally disabled and can perform his job with or without reasonable accommodation; 2) he was discharged; and 3) the disability was a factor in his discharge. *Hervey v. Mo. Dep't of Corr.*, 379 S.W.3d 156, 160 (Mo. banc 2012). Missouri law "makes the question of whether the job can be performed with reasonable accommodation a part of the test for determining whether an employee is [disabled]." *Devor v. Blue Cross & Blue Shield of Kan. City*, 943 S.W.2d 662, 666 (Mo. Ct. App. 1997). Stated differently, an employee who is unable to perform his job with or without a reasonable accommodation—one that does not impose "undue financial and administrative burdens" on the employer or require fundamental changes in the nature of the work—is not disabled under the MHRA. *Id*.

Because Plaintiff has not alleged any direct evidence of Spire's discriminatory intent, he must prove his case circumstantially under the *McDonnell Douglas* burden-shifting framework. *See generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). "Under that three-step framework, the plaintiff must establish a prima facie case, the defendant must then articulate a legitimate, nondiscriminatory reason for discharging the employee, and to succeed, the employee must show that the employer's proffered reason for firing him is a pretext for unlawful discrimination." *Johnson v. Humphreys*, 949 F.3d 413, 416 (8th Cir. 2020).

With this framework in mind, the Eighth Circuit held in *Boldt v. N. States Power Co.*, 904 F.3d 586 (8th Cir. 2018), that the LMRA preempted a plaintiff's disability-discrimination claim under the Minnesota Human Rights Act, a statute that closely mirrors disability-discrimination claims under the MHRA. *Id*. at 593. In *Boldt*, the employer was concerned about the defendant's

7

fitness for duty after he came to work smelling of alcohol. *Id*. at 589. Although the employee—a union member—passed a breathalyzer test, the employer placed him on administrative leave and imposed conditions on the employee's reinstatement, as was required by the fit-for-duty drug and alcohol testing and safety requirements incorporated into the CBA between the employer and the union. *Id*. at 589. Plaintiff alleged the employer's actions were discriminatory and violated the MHRA, but the employer argued that his claims were preempted by the LMRA. *Id*.

The Eighth Circuit agreed with the employer. In reaching its decision, the court held that the plaintiff's claim was substantially dependent on the employer's fitness-for-duty policy. *Id*. at 592. The Court reasoned that because Plaintiff had to prove he was disabled under the *McDonnell Douglas* burden-shifting framework, he could not "prevail on his disability-discrimination claim without proving that he was qualified to work 'under a proper interpretation of the relevant rights and duties' incorporated into the collective-bargaining agreement." *Id*. at 593.

Relying on *Boldt*, the Eighth Circuit recently held that the LMRA preempted an African-American delivery-service driver's race-discrimination claim under the Arkansas Civil Rights Act of 1993. *Johnson*, 949 F.3d. at 414. In that case, the union-member driver was terminated after allegedly committing the "extremely serious offense" of conducting a "free fall" delivery, as defined by the CBA. *Id*. at 415. The Court held that because a plaintiff must first prove that he is "an otherwise qualified person" before he can proceed on a race-discrimination claim under the Arkansas statute, the driver would be required to reference the "established rules and practices under the CBA" in making that showing. *Id*. at 416. Thus, the court would necessarily be required to interpret the terms of the CBA, and his claim was preempted. *Id*.

Similarly, to establish his case under the *McDonnell Douglas* framework here, Plaintiff must first prove he was disabled, that is, that he was able to perform the functions of his job with

or without a reasonable accommodation. Plaintiff argues he was; Spire claims he was not. To resolve this dispute, this Court would need to determine whether Plaintiff was fit for duty given his use of controlled substances, a question the CBA and the drug-testing Policy address in detail. For example, the Policy sets forth the procedures Spire must follow to drug test its employees and the steps for an interactive process in which Spire must engage when an employee makes a request for reasonable accommodation. Therefore, without interpreting the Policy, the Court cannot determine whether Plaintiff could have performed the essential functions of his job. Because Plaintiff's claim is substantially dependent on the analysis of the CBA and the Policy, it is preempted by the LMRA. *See also Gust v. Spire Missouri, Inc.*, No. 4:19-CV-00430-BCW (W.D. Mo. Dec. 17, 2019) (denying the plaintiff's motion to remand because his disability-discrimination claims under the MHRA against Spire were completely preempted by the LMRA).

**III. The Court exercises supplemental jurisdiction over Plaintiff's remaining claims.**

Neither party disputes that Plaintiff's remaining claims of age discrimination, retaliation, and breach of confidentiality all arise out of the same case or controversy as Plaintiff's disability-discrimination claim. Thus, this Court exercises its supplemental jurisdiction over those claims. 28 U.S.C. § 1367.

## CONCLUSION

For the reasons discussed above, Plaintiff's Motion to Remand (Doc. 28) is DENIED.

**IT IS SO ORDERED.**

Date: __March 30, 2020__            /s/ Greg Kays
                                                       GREG KAYS, JUDGE
                                                       UNITED STATES DISTRICT COURT